UNITED STATE DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| SL TENNESSEE, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 3:11-CV-340 |
| ) | (VARLAN/GUYTON) |
| V. ) | |
| ) | |
| OCHIAI GEORGIA, LLC, ) | |
| ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636, the Rules of this Court, and the order of the District Judge [Doc. 17] referring Defendant's Motion to Dismiss and Petition to Stay Further Proceedings [Doc. 10] to the undersigned for report and recommendation.

**I.   BACKGROUND**

On July 19, 2011, the Plaintiff SL Tennessee, LLC, sole member of SL America Corporation, a corporation organized under the laws of the State of Tennessee with its principle place of business in Tennessee, filed this suit against Ochiahi Georgia, LLC, a limited liability corporation organized under the laws of the State of Georgia with its principle place of business in Georgia. This Court has jurisdiction over the matter pursuant to 28 U.S.C. § 1332(a)(1). [Doc. 1 at ¶¶ 1-4].

This suit arises out of a contractual relationship between the parties. In 2009, the Plaintiff was awarded the right to supply automotive parts to an equipment automotive manufacturer based in Michigan. [Doc. 1 at ¶ 6]. The Plaintiff intended to outsource the

production of those components to a sub-supplier. [Doc. 1 at ¶ 7]. The Plaintiff considered the Defendant as a possible sub-supplier, as the Defendant had been supplying other components to the Plaintiff. [Doc. 1 at ¶ 10]. The Plaintiff alleges that the components to be supplied – brake pedal arms and shift levers – were more complex in design and presented more safety concern components than the components that the Defendant had supplied to the Plaintiff in the past. [Doc. 1 at ¶ 11].

The Plaintiff alleges that in attempting to procure the sub-supplier position, an agent of the Defendant made representations which later proved to be false. [Doc. 1 at ¶14]. The Plaintiff alleges that the agent of the Defendant attempted to associate itself with other "Ochiai" organizations in Japan and the United States. [Doc. 1 at ¶ 14]. The Plaintiff argues that the Defendant, without additional support or expansion, would not have the capacity to supply the components required. [Doc. 1 at ¶ 15]. The Plaintiff states that it relied on the representations about support from other "Ochiai" entities in awarding the sub-supplier work to the Defendant. [Doc. 1 at ¶ 16]. The Plaintiff also alleges that the Defendant made representations about hiring additional employees which were false. [Doc. 1 at ¶ at 17-18].

The Plaintiff alleges that the parts supplied to it by the Defendant were delivered late on numerous occasions and suffered from an exceedingly high number of defects. [Doc. 1 at ¶ 25]. A high number of the shipments were allegedly delayed and therefore required the use of air shipment. The Plaintiff alleges that the Defendant converted its United Postal Service account number, without authorization, to pay for these air shipments. [Doc. 1 at ¶ 26].

The Plaintiff maintains that the components supplied to it failed to comply with the express warranties provided by the Defendant, because they failed to conform to the specifications furnished by the Plaintiff and were not merchantable or fit for their ordinary use.

Moreover, the Plaintiff alleges that it was damaged by the untimely deliveries by the Defendant. [Doc. 1 at ¶ 29].

The Plaintiff filed a Complaint [Doc. 1], with this Court alleging the above facts. In the Complaint, the Plaintiff presents claims for: (1) breach of contract, (2) breach of express warranty, (3) breach of implied warranty of fitness for a particular purpose, (4) breach of implied warranty of merchantability, (5) negligent misrepresentation, (6) fraud and deceit, (7) fraud in the inducement, (8) conversion, and (9) violation of the Tennessee Consumer Protection Act.

The Defendant responded by filing the Motion to Dismiss and Petition to Compel Arbitration or, in the Alternative, to Stay Further Proceedings, which is now before the Court. The Plaintiff responded in opposition to the Motion to Dismiss [Doc. 12], the Defendant filed a reply [Doc. 13], and with the Court's permission, the Plaintiff filed a sur-reply [Doc. 16].[1] The Court finds that this issue is now ripe for adjudication, and for the reasons stated below, the undersigned will **RECOMMEND** that the Motion to Dismiss and Petition to Compel Arbitration or, in the Alternative, to Stay Further Proceedings be **GRANTED IN PART** and **DENIED IN PART**.

## II. POSITIONS OF THE PARTIES

The Defendant argues that the contract governing the Plaintiff's agreement to purchase automobile components from the Defendant contains an arbitration clause, wherein the parties agree to arbitrate disputes "aris[ing] out of, or relat[ing] to, or involv[ing]" an alleged breach of the contract between them. [Doc. 11 at 1-2]. The Defendant states that after the Plaintiff filed

---

[1] The Court would note that all filings on the arbitration issue were timely filed and have been considered by the Court. Defendant has argued that the Plaintiff did not timely file its response brief, because the brief was not filed within twenty-one days of the filing of the Defendant's motion. As the Plaintiff explained in its sur-reply, it is allotted twenty-one days, plus three days for service in which to respond, pursuant to Local Rule 7.1 and Rules 6(d), 5(b)(2)(E) of the Federal Rules of Civil Procedure. The Court finds that the briefing on this issue, including the Plaintiff's Response [Doc. 12], was timely filed.

3

the Complaint in this matter, the Defendant notified the Plaintiff that it wished to invoke the arbitration clause, but the request to arbitrate was not honored. [Doc. 11 at 2]. The Defendant maintains that the arbitration clause between the parties is enforceable and would compel arbitration of all of the claims in this case. [Doc. 11 at 6]. The Defendant requests that all claims in this case be referred to arbitration and that the case be dismissed. In the alternative, the Defendant requests that this case be stayed pending arbitration. [Doc. 10 at 1].

The Plaintiff responds that the arbitration clause, if it is found to be applicable, does not contemplate the parties' arbitrating the Plaintiff's claim for fraud in inducement and does not encompass the Plaintiff's claims for fraud and deceit, conversion, and violation of the Tennessee Consumer Protection Act. [Doc. 12 at 1]. The Plaintiff cites the Court to cases from Tennessee state courts in support of its argument that its claims do not fall within the purview of the arbitration agreement. See, e.g., Frizzell Constr. Co. v. Gatlinburg, L.L.C., 9 S.W.3d 79, 86 (Tenn. 1999) (holding that "the chancery court properly withheld the issue of fraudulent inducement from arbitration in accordance with the intention of the parties"). The Plaintiff maintains that its claims regarding the formation of the contract and its tort claims are not subject to arbitration, and therefore, dismissal or a stay of these proceedings would not be appropriate. [Doc. 12 at 6-7].

### III. ANALYSIS

The contract between the parties contains the following arbitration clause:

> If a dispute arises out of, or relates to, or involves an alleged breach of this contract, and the dispute is not properly resolved through negotiations, the parties agree to undertake resolution of the dispute by arbitration under the Rules of the American Arbitration Association. Any such resolution shall be enforceable by a court order in accordance with the provisions of the Uniform

4

> Arbitration Act. Any arbitration conducted under this contract shall take place in Knoxville, Tennessee.

[Doc. 1-1 at 4]. With this arbitration clause in mind the Court turns to the statutes and case law, guiding application of this provision.

The Federal Arbitration Act ("FAA") directs:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. A court, "upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ." 9 U.S.C. § 3.

"The FAA was designed to override judicial reluctance to enforce arbitration agreements, to relieve court congestion, and to provide parties with a speedier and less costly alternative to litigation." Stout v. J.D. Byrider, 228 F.3d 709, 714 (6th Cir. 2000). Consistent with these goals, the FAA has been interpreted as requiring that courts "rigorously enforce agreements to arbitrate." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 221 (1985). "[A]ny ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." Stout, 228 F.3d at 714 (citing Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 626 (1985)). Further, "if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation." KPMG LLP v. Cocchi, ___ U.S. ___, 132 S. Ct. 23, 23 (2011).

5

### A.  The Claim for Fraud in the Inducement Should be Referred to Arbitration

The Plaintiff argues that the Plaintiff's claim for fraud in the inducement should not be referred to arbitration. The Plaintiff maintains that the parties did not agree to arbitrate the claim for fraud in the inducement and that they cannot be compelled to arbitrate this claim. [Doc. 12 at 2].

In Rent-A-Center, West, Inc. v. Jackson, ___ U.S. ___, 130 S. Ct. 2772 (2010), the Supreme Court of the United States recently addressed application of the FAA, where a plaintiff challenges a contract containing an arbitration clause. In Rent-A-Center, the parties agreed that the arbitrator would have "exclusive authority" to resolve any dispute relating to the enforceability of the parties' agreement to arbitrate. Id. at 2777. The Plaintiff argued that the contract was unconscionable under Nevada state law and should not be enforced. Id. at 2775.

The Court in Rent-A-Center held that a party's challenge to a contract as a whole does not prevent a court from enforcing a specific agreement to arbitrate. Id. at 2778. The Court explained that if, for example, a party presented a challenge based upon fraud in the inducement of the arbitration clause, the court in which a complaint had been filed should address the challenge prior to compelling arbitration. Id. If the party presented a challenge to the contract as a whole, the court should not intervene. Id. ("[W]here the alleged fraud that induced the contract equally induced the agreement to arbitrate which was part of the contract – we nonetheless require the basis of challenge to be directed specifically to the agreement to arbitrate before the court will intervene.")

6

Justice Stevens, writing for the dissent in Rent-A-Center, presented the rule more succinctly, explaining:

> In sum, questions related to the validity of an arbitration agreement are usually matters for a court to resolve before it refers a dispute to arbitration. But questions of arbitrability may go to the arbitrator in two instances: (1) when the parties have demonstrated, clearly and unmistakably, that it is their intent to do so; or (2) when the validity of an arbitration agreement depends exclusively on the validity of the substantive contract of which it is a part.

Rent-A-Center, 130 S.Ct. at 2784.[2]

The undersigned finds that this case falls into the latter category. The validity of the arbitration clause in this case "depends exclusively on the validity of the substantive contract of which it is a part." The Plaintiff has not alleged that the Plaintiff was fraudulently induced to agree to the arbitration clause alone. Instead, the Plaintiff has alleged the Defendant made statements about its association with other Ochiai entities and its intention to hire additional employees [Doc. 1 at ¶¶ 14-17], and thereby, induced the Plaintiff to enter into the contract *as a whole*. The Plaintiff's allegations pertain to the contract as a whole, not to the arbitration clause itself. See, e.g., Doc. 1 at ¶ 65 ("[False representations] were made with the intent to deceive and induce [the Plaintiff] to enter into the Subject Contracts . . . ."); Doc. 1 at ¶ 67 (The Plaintiff "relied upon [the Defendant's] representations . . . by entering into the Subject Contracts. . . .").

---

[2] In Rent-A-Center, the disagreement between those justices in the majority and those filing the dissenting opinion hinged upon how the clause delegating the arbitrator's authority ("the delegation clause") should be viewed. The majority found that the delegation clause, which was contained within a larger arbitration agreement, was not challenged specifically. Instead, they found the arbitration agreement as a whole was challenged. Rent-A-Center, 130 S.Ct. at 2781. As a result, the Court found the plaintiff's unconscionability challenge to the arbitration agreement as a whole should be directed to an arbitrator. The justices in the dissenting opinion suggested that a more appropriate reading of the parties' agreement was to view the arbitration agreement, as a component of a larger employment agreement, and find that the plaintiff's challenge to the arbitration agreement was a challenge to only the portion of the parties' larger agreement addressing arbitration. Id. at 2786-87. Based upon this interpretation, the minority would have found that the plaintiff's challenge was an issue for the court rather than an arbitrator.

This Court has cited to statements of law from both the majority and the dissenting opinions, which were not points of dispute. Specifically, the majority and the dissent did **not** disagree on the general rule governing the arbitrability issue. The rule, from the Court's holding in Prima Paint Corp. v. Flood & Conklin, Mfg., Co., 388 U.S. 395 (1967), directs that merits of a claim for fraud in the inducement are "for the arbitrator, so long as the claim of fraud in the inducement did not go to the validity of the arbitration clause itself," id. at 403.

7

It is well-settled that such claims for fraud in the inducement must be referred to arbitration. See Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 398 (1967) (finding that plaintiff's claim that the defendant had fraudulently represented that it was solvent and able to perform its contractual obligations should be referred to arbitration).

The Court finds the Plaintiff's claim that it was fraudulently induced into contracting with the Defendant relates to the contract as a whole and not just the arbitration clause. Therefore, the Court finds that the validity of the contract is an issue for the arbitrator. The Court finds that the claim for fraud in the inducement "arises out of, or relates to, or involves an alleged breach of this contract," and therefore, the Court finds the claim is subject to arbitration.

## B. The Claims for Fraud and Deceit, Conversion, and Violation of the Tennessee Consumer Protection Act Should be Referred to Arbitration

The Plaintiff maintains that its claims for fraud and deceit (Count VI), conversion (Count VIII), and violation of the Tennessee Consumer Protection Act (Count IX) do not fall within the scope of the claims subject to arbitration. [Doc. 12 at 5].

Because this case is before the Court based upon diversity jurisdiction, see 28 U.S.C. § 1332, the Court must apply the law of the forum state, Tennessee, in interpreting the parties' contract and its provisions. See Uhl v. Komatsu Forklift Co., Ltd., 512 F.3d 294, 302 (6th Cir.2008) ("When considering [the defendant's] contract-law argument, because we are sitting in diversity, we apply the law, including the choice of law rules, of the forum state. In this case, the forum state is Michigan, so we must apply the law that Michigan would apply when interpreting the arbitration agreement.") (internal quotations and citation omitted); see also First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) (When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts.). Moreover, the parties to the

8

contract indicated their choice of law by stating that the contract shall be governed by the laws of the State of Tennessee. [Doc. 12-1 at 2].

The Plaintiff cites the Court to Brown v. Karemor International, Inc., 1999 WL 221799 (Tenn. Ct. App. Apr. 19, 1999), and argues that its claims for fraud and deceit, conversion and violation of the Tennessee Consumer Protection Act are unrelated to the parties' contract and not subject to arbitration. The Court has reviewed Karemor and finds that it is neither controlling nor instructive on the issue before the Court. The court in Karemor took issue with the circumstances under which the plaintiff, a consumer, signed the contract and her knowledge of the provision. Id. at *3 ("[W]e could not say that a provision buried on the reverse side of a form agreement, allegedly signed in Tennessee, requiring that any dispute over the agreement be arbitrated in Carson City, Nevada, was a reasonable provision.").

The court in Karemor concluded that "the question of whether the parties were bound by the arbitration provision was still open" and decided, without analysis, that the claims for fraud in the inducement, violation of the Tennessee Consumer Protection Act, and conversion did not fall within the language of the arbitration provision, which applied to claims "relating to the agreement." Id. at *2. In this case, the arbitration clause is broader than the clause in Karemor, and applies to disputes that: (1) arise out of, (2) relate to or (3) involve an alleged breach of the contract.

In its claim for fraud and deceit, the Plaintiff argues that it relied upon misrepresentations about, *inter alia*, the Defendant's affiliation with other "Ochiai" entities and its intention to employee additional persons to fulfill its obligations under the contract. [Doc. 1 at ¶¶ 58, 14, 16, 17]. These representations clearly relate to the contract, the Defendant's ability to perform under the contract, and the Defendant's alleged breach of the contract. The Court, therefore, finds that

9

the claim for fraud and deceit "arises out of, or relates to, or involves an alleged breach of this contract," and therefore, the claim is subject to arbitration.

The Court also finds that the Plaintiff's claim for conversion is subject to arbitration. In describing the conversion by the Defendant, the Plaintiff states that the shipment of parts under the contract became "so delayed that [the Defendant] was required to ship a significant amount of the Subject Parts via air shipment, at a substantially higher cost." [Doc. 1 at ¶ 26]. The Plaintiff alleges that, as a result, the Defendant "converted for its own use [the Plaintiff's] UPS account number and billed that UPS account for air shipments." [Doc. 1 at ¶ 26]. Based upon the Plaintiff's allegations, the Court finds that the claim for conversion "arises out of, or relates to, or involves an alleged breach of this contract," because the conversion was allegedly motivated by an attempt to remedy a breach of contract or avoid further breaches of the contract due to untimely compliance or both.

Finally, the Court finds that the Plaintiff's claim for violation of the Tennessee Consumer Protection Act is subject to arbitration. The statement of this claim in the Complaint is vague. It cites all of the previous paragraphs of the Complaint, restates the statutory cause of action, and cites five provisions of the Tennessee Consumer Protection Act. At a minimum, however, it establishes that this claim is based upon the same factual allegations as the other claims in the Complaint. These factual allegations relate to the contract and the alleged breaches of the contract.

The Plaintiff has argued that the claim under the Tennessee Consumer Protection Act should not be submitted to arbitration. The Plaintiff has cited the Court to <u>Karemor</u>, which for the reasons stated above the Court finds is not instructive on this issue. The Plaintiff has not brought forth any other support for its position, and the Court's research on the issue has yielded

only opinions indicating that a claim under the Tennessee Consumer Protection Act is not precluded from arbitration as a rule, see Wholesale Tape & Supply Co. v. iCode, Inc., 2005 WL 3535148, at *5 (E.D. Tenn. Dec. 22, 2005) (finding that "the fact Plaintiff's claims are brought pursuant to the Tennessee Consumer Protection Act ("TCPA") rather than under contract law is of no import to [the Court's analysis of arbitrability]"). The Court, therefore, finds that the claim for violation of the Tennessee Consumer Protection Act "arises out of, or relates to, or involves an alleged breach of this contract."

Accordingly, the Court finds that the claims presented in this case should be subjected to arbitration.

**C.     All Other Claims in the Complaint Should be Referred to Arbitration**

The Plaintiff does not dispute that its claims for breach of contract, breach of express warranty, breach of implied warranty of fitness for a particular purpose, breach of implied warranty of merchantability, and negligent misrepresentation (Counts I-V) are subject to arbitration. The Court has reviewed the Complaint and finds that these claims relate to and involve an alleged breach of the parties' contract.

Accordingly, based upon the Plaintiff's concession and the Court's review, the Court finds that all other claims in the Complaint should be referred to arbitration.

## IV. CONCLUSION

Based upon the foregoing and consistent with the "liberal federal policy favoring arbitration," AT&T Mobility LLC v. Concepcion, ___U.S.___, 131 S.Ct. 1740, at 1749 (2011), the Court finds that all claims before the Court should be subjected to arbitration pursuant to the arbitration clause contained in the parties' contract.

The undersigned finds that the Defendant's Motion to Dismiss and Petition to Stay Further Proceedings **[Doc. 10]** is well-taken, in part, and hereby **RECOMMENDS**[3] that it be **GRANTED IN PART** and **DENIED IN PART**. Specifically, the undersigned **RECOMMENDS** that the parties be **ORDERED** to arbitrate the disputes alleged in the Complaint and that this case be **STAYED** pending completion of arbitration, see 9 U.S.C. § 3. The undersigned **RECOMMENDS** that the request for dismissal be **DENIED**.

Respectfully Submitted,

/s H. Bruce Guyton
United States Magistrate Judge

---

[3] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Federation of Teachers, 829 F.2d 1370 (6th Cir. 1987).